# EXHIBIT A

John E. Cowan  SBN 168110
LAW OFFICE OF JOHN E. COWAN
100 Pine St. Ste 1250
San Francisco, CA 94111
Telephone 888-252-1231
Fax: 530-464-0088

Attorney for Plaintiff, Lori Reese-Brown



PER LOCAL RULE, THIS CASE IS ASSIGNED TO DEPT○⊥ FOR ALL PURPOSES.

### SUPERIOR COURT OF THE STATE OF CALIFORNIA
### IN THE COUNTY OF CONTRA COSTA

| | |
|---|---|
| LORI REESE-BROWN, an individual<br>Plaintiff,<br><br>vs.<br><br>CITY OF RICHMOND, a public entity, STEVEN FALK, in his capacity as previous Interim City Manager of the City of Richmond and as an individual, CARLOS MARTINEZ, in his capacity as City Manager of the City of Richmond and as an individual and DOES 1-100, INCLUSIVE,<br><br>Defendants. | Case No.:  SUMMONS ISSUED<br><br>**C21-02282**<br>(UNLIMITED CIVIL ACTION)<br><br>**COMPLAINT FOR:**<br><br>1. **WHISTLE BLOWER**<br>2. **RETALIATION**<br>3. **HARRASSMENT**<br>4. **NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS**<br>5. **DISCRIMINATION**<br>6. **RESPONDEAT SUPERIOR** |

Plaintiff LORI REESE-BROWN, ("Brown" and/or "Plaintiff") individually brings this Complaint against Defendants, The CITY OF RICHMOND, ("City" and/or "Defendant" STEVEN FALK as the Interim City Manager of the City of Richmond and as an individual, ("Falk" and/or "Defendant"), CARLOS MARTINEZ as the City Manager of the City of Richmond and as an individual ("Martinez" and/or Defendant" and DOES 1 through 100 ("DOES") Collectively referred to as "Defendants". Plaintiff alleges as follows:

1

## I. PARTIES

1. Plaintiff, LORI REESE-BROWN (hereinafter, "Plaintiff and/or "REESE-BROWN"), an individual, was at all times mentioned herein, employed in the County of Contra Costa, State of California. Defendant, CITY OF RICHMOND (hereinafter "CITY OF RICHMOND" and/or "Defendant") is a public entity doing business in the County of Contra Costa, State of California. STEVEN FALK. (hereinafter "Falk" and/or "Defendants") is an individual employed in the County of Contra Costa, State of California. CARLOS MARTINEZ is an individual employed in the County of Contra Costa, State of California. Collectively ("Defendants").

2. Plaintiff is ignorant of the true names and capacities, whether individual, corporate, or otherwise, of defendants sued herein as DOES 1 through 100, inclusive. Plaintiff therefore sues these defendants by fictitious names and will seek to amend their complaint to show their true names when ascertained.

3. Plaintiff are informed and believes, and based thereon alleges, that each of the defendants designated herein as a DOE are legally responsible in some manner for the events and happenings referred to which caused injuries and damages to Plaintiff as herein alleged.

4. Plaintiff will ask leave of court to amend this complaint to show their true names and capacities when the same have been ascertained.

5. Each defendant named above is a natural person except CITY OF RICHMOND and DOES 1 through 50.

6. At all relevant times mentioned herein, defendants, and each of them, as well as DOES 1-100, were the agents, servants, employees, permissive users, joint venturers, successors in interests, assigns and subsidiaries, each of the other, and at all times pertinent hereto might have been acting within the scope and course of their authority.

2

## II. JURISDICTION AND VENUE

7. This case is properly before this Court because the matter involves issues of state law, and all Defendants, presently and at all times relevant to this action, have conducted all of the allegations set forth in this Complaint in Conta Costa County.

8. At all times mentioned herein, Defendants and each of them, conducted all of the allegation set forth in this Complaint in the State of California and within the County of Contra Costa

9. Pursuant to Code of Civil Procedure §§ 393, 395, and 395.5, Contra Costa County is an appropriate venue for this case.

## III. FACTUAL ALLEGATIONS

10. January 26, 2004, Plaintiff was hired by Defendant, City of Richmond. Her job title was Principal Planner in the Department of Planning & Building Services. From 2008, until about September 2018, the former City Manager, Bill Lindsey was her immediate supervisor.

11. From October 2018 to July 2019, the Plaintiff was supervised by Carlos Martinez, another former City Manager. From September 2019 to January 2020, the Plaintiff was supervised by Steven Falk, Interim City Manager.

12. During her time as Project Manager in the City Manager's Office, the Plaintiff was denied five (5) promotions. The Plaintiff was never even notified on the status of one of the promotions. She was just simply overlooked and ignored when she inquired as to the status.

13. In October 2018, the Plaintiff felt very discriminated in her workplace and filed a complaint with the EEOC. The complaint was based on race discrimination.

3

14. After the Plaintiff filed the EEOC complaint, Defendant Falk placed gave the position that the Plaintiff was applying for in her Department to another person who never applied for the position.

15. The Plaintiff's director supervisor at the time, Bill Lindsey, was made aware of the Plaintiff's complaint. They discussed the possibility of giving the Plaintiff a raise, but Bill Lindsey retired, and the Plaintiff was never given a raise.

16. When Carlos Martinez was hired as the Plaintiff's supervisor, the Plaintiff discussed her EEOC complaint to him and continued to request hire wages comparable to males and others in the Department and throughout the organization based on substantially similar work as a way to resolve her claim.

17. Instead of giving the Plaintiff a raise, Defendant Martinez retaliated against her by excluding her from meetings, isolating and diminishing her work responsibilities, and threatening termination because of her EEOC complaint.

18. In September 2019, nine months after Defendant Martinez was hired, he was let go, and Defendant Steven Falk was brought on board as the Interim City Manager.

19. Defendant Falk continued the same retaliation Defendant Martinez started by scheduling and meeting with Mr. Martinez on many occasions. He also excluded the Plaintiff from management meetings, and isolating her work responsibilities. The Plaintiff noted all of these actions in various internal complaints she filed with Human Resources in which she included the EEOC complaint that Defendant Falk was provided copies and became aware of the Plaintiff's previous charge with the EEOC.

4

20. Soon after Defendant Falk arrived, in September 2019, there were seven (7) positions open for promotion. The Plaintiff applied for five (5) of the positions because she believed she was qualified. Defendant Falk was in charge of all the hiring and interviewing.

21. On or about February 21, 2020, the Plaintiff learned she did not get any of the promotions. To date, the Plaintiff was never even notified that she did not get one of the five promotions that Defendant Falk decided to give to another individual in the Department that never applied. During the time from October 2018 to March 2020, the Plaintiff had also been denied benefits and raises that people in other positions received in the same Executive Management classification. The Defendants did not give the Plaintff a reason for denying her a raise, benefits, or the promotion.

22. The Plaintiff was denied all three because she engaged in opposition behavior (filing a charge with the EEOC), in violation of Title VII of the Civil Rights Act of 1964, as amended, the Equal Pay Act of 1963, as amended, and the Age Discrimination in Employment Act of 1967, as amended.

23. Additionally, and separately, the Plaintiff was a whistleblower when she learned Mayor Tom Butt violated the City of Richmond's Charter and the City's procurement policies for monetary gains and other benefits. She sent an email to the Richmond City Council letting them know what was going on and asked the Council to continue to have a fair and honest process for holding all public officials accountable, including the Mayor, when dishonesty and special favors were present.

24. In 2019, The Plaintiff filed a complaint against Mayor Tom Butt, through the City's Human Resources Department and City's Attorney's Office. The complaint alleged the Mayor had several conflict of interests and that he violated the City's Charter, and the City's

5

procurement policies by: 1) Negotiating with an outside firm a lease agreement for a City owned building at 1600 Nevin Plaza, Richmond 94804 (Richmond BART station location;

2) Circumventing the City's procurement / solicitation process to use his architectural firm to design the public owned building, thereby not allowing other qualified firms an opportunity to bid on public work;

3) Offering the City building to the firm at a low monthly cost, and directing to complete the process in exchange for special favors; and

4) Voting in favor on his project during a Council meeting

25. It appears since the complaint was filed, some City staffers have tried to protect the Mayor by refusing to release the full investigative report made through a public records request, which summary findings concluded the Mayor did NOT have a contract as required to perform the architectural services his firm rendered; that he did NOT have the authority to negotiate a lease agreement with an outside party for which he had designed plans for; and that he SHOULD have abstained from voting on the project he negotiated the lease for and designed.

26. As a City Planner with nearly 25 years of experience, the Plaintiff was aware the Mayor's actions were a conflict of interest and illegal. However, some City staff who were aware of the Mayor's unscrupulous actions, blindly overlooked the integrity of the process by forwarding the item for Council's approval. The Plaintiff asked the Richmond City Council to further investigate the Mayor's actions and censor Mayor Butt as any other City official would be removed from office for intentionally and deliberately negotiating agreements, and performing services in exchange for favors or monetary benefits of this nature.

27. The City's Human Resources Department responded to the Plaintiff's complaint by trying to cover up allegations for the Mayor and made false findings to not address the Plaintiff's

6

complaint. That is why the Plaintiff informed the City Council by sending them the information she alleged in her complaint. They reopened the complaint and are presently investigating the matter. The complaint alleges retaliation because of the complaint.

### FIRST CAUSE OF ACTION
### Whistleblower (False Claims Act)
### Against All Defendants

28. Plaintiff, repeats and re-allege each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

29. As codified in the False Claims Act, (FCA) a cause of action for retaliation requires the qui tam whistleblower to prove that he was: (1) "an employee" who was (2) "discriminated against" (3) "by his or her employer" (4) "because of lawful acts done by the employee," (5) "in furtherance of an [FCA claim]." Nonetheless, a majority of courts have distilled this statutory list into two broad elements and require the qui tam whistleblower prove (1) that he engaged in protected activity, that is, "acts done . . . in furtherance of an action under this section"; and (2) he was discriminated against "because of" that activity. To prove the second element, the employee must make two further showings: (1) "the employer had knowledge the employee was engaged in protected activity"; and (2) "the retaliation was motivated, at least in part, by the employee's engaging in [that] protected activity." A claim may be stated under the whistleblower protection section even when no FCA lawsuit has been filed. The qui tam whistleblower is not even required to know that the investigation could lead to filing a claim under the FCA. The policy reason behind this decision is that if the qui tam whistleblower were required to know this, it would result in decreased whistleblower protection under the statute; the statute would only protect a person versed in the law. Therefore, conducting an investigation without

7

knowledge of the existence of the FCA is considered "in furtherance of" an action under the whistleblower section. A qui tam whistleblower will be protected regardless of whether he has filed a FCA lawsuit or whether the government has initiated an investigation.

30. The conduct as described in more detail above, of the defendants, and each of them, was a substantial factor in causing Plaintiff harm.

### SECOND CAUSE OF ACTION
### Retaliation
### Against All Defendants

31. Plaintiff repeats and re-alleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

32. The elements of a claim for Retaliation are:

(1) protected activity: "participation" in an EEO process or "opposition" to discrimination; (2) materially adverse action taken by the employer; and. (3) requisite level of causal connection between the protected activity and the materially adverse action.

33. The EEOC's Guidance On Retaliation states that employees don't have to prove their claims of workplace wrongdoing are accurate and true to win a retaliation charge. Employees' complaints or opposition activities will be protected as long as their actions are based on reasonable, good faith that their assertions are accurate.

34. The conduct of defendants, and each of them, described in more detail above, was a substantial factor in causing Plaintiff harm.

### THIRD CAUSE OF ACTION
### Harassment A
### [Against All Defendants]

35. Plaintiff repeats and re-alleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

8

35. CCP § 527.6(3) states "Harassment" is unlawful violence, a credible threat of violence, or a knowing and willful course of conduct directed at a specific person that seriously alarms, annoys, or harasses the person, and that serves no legitimate purpose. The course of conduct must be that which would cause a reasonable person to suffer substantial emotional distress, and must actually cause substantial emotional distress to the petitioner." The Plaintiff's supervisors and other staff continually harassed the Plaintiff by intentionally leaving her out of meetings and never considering her for raises and promotions. This was all used to harass the Plaintiff.

36. The Plaintiff claims that she was subjected to harassment based on race and gender at the City of Richmond and that this harassment created a work environment that was hostile, intimidating, offensive, oppressive, or abusive. The elements of Harassment are 1. That the Plaintiff was an employee of/a person providing services under a contract with the Defendant; 2. That the Plaintiff was subjected to harassing conduct because she was a woman; 3. That the harassing conduct was severe or pervasive; 4. That a reasonable women in the Plaintiff's circumstances would have considered the work environment to be hostile, intimidating, offensive, oppressive, or abusive; 5. That REESE-BROWN considered the work environment to be hostile, intimidating, offensive, oppressive, or abusive; 6. That a supervisor engaged in the conduct; [or] That the defendant their supervisors or agents knew or should have known of the conduct and failed to take immediate and appropriate corrective action; 7. That the Plaintiff was harmed; and 8. That the conduct was a substantial factor in causing the Plaintiff's harm.

9

37. The Defendants, and each of them, worked together to cause harm to the Plaintiff by retaliating against the Plaintiff when she filed her complaint and when she acted as a whistle blower against the Mayor.

38. The conduct of defendants, and each of them, described in more detail above, was a substantial factor in causing Plaintiff harm.

## FOURTH CAUSE OF ACTION
### Negligent Infliction of Emotional Distress
### [Against All Defendants]

39. Plaintiff repeats and re-alleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

40. A plaintiff is the direct victim of negligent infliction of emotional distress if:

1. The defendant exhibited negligent conduct, *and* As a result of the defendant's negligence, the plaintiff suffered serious emotional distress. Emotional distress includes suffering, anguish, fright, horror, nervousness, grief, anxiety, worry, shock, humiliation, and shame. Serious emotional distress exists if an ordinary, reasonable person would be unable to cope with it. Defendants, and each of them, were negligent, as pled herein above. The doctrine of "negligent infliction of emotional distress" is not a separate tort or cause of action. It simply allows certain persons to recover damages for emotional distress only on a negligence cause of action even though they were not otherwise injured or harmed. (See *Molien v. Kaiser Foundation Hospitals* (1980) 27 Cal.3d 916, 928 [167 Cal.Rptr. 831, 616 P.2d 813].)

41. The actions of the Defendants caused the Plaintiff a great deal of stress, anxiety, loss of sleep, mental, physical and emotional distress. The Plaintiff could not understand why anyone would intentionally and falsely try to tarnish the Plaintiff's impeccable career.

10

42. The negligence of defendants, and each of them, was a substantial factor in causing Plaintiff serious emotional distress, causing suffering, anguish, nervousness, grief, anxiety, worry, shock, humiliation, and shame, more than an ordinary reasonable person would be able to cope with, and with physical manifestations therein.

43. The negligence by the Defendants caused the Plainitff a loss of sleep, difficulty in her relationships with her family, stress and anxiety and a disruption in her well being.

44. Additionally, Plaintiff was being injured and as a result, suffered severe emotional distress of which was caused by the Defendants and each of them.

45. As a direct result of the negligence described in more detail above of the defendants, and each of them, Plaintiff suffered severe emotional distress.

### FIFTH CAUSE OF ACTION
### Discrimination
### [Against All Defendants]

46. Plaintiff repeats and re-alleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

47. To establish a prima facie case of discrimination based on disparate treatment a plaintiff must show that she (1) is a member of a protected class, (2) suffered an adverse employment action, (3) *met her employer's legitimate expectations at the time of the adverse employment action*, and (4) was treated differently from similarly situated employees outside his protected class.

48. Title VII of the Civil Rights Act of 1964 prohibits discrimination in employment on the basis of sex, race, color, national origin, and religion. Employment discrimination actions may be shown by direct evidence or through the burden-shifting framework outlined

11

in *McDonnell Douglas Corp. v. Green*. The employer bears the burden of production and must articulate a non-discriminatory reason for the adverse employment action.

49. As a proximate result of the above-described actions taken by the defendants, Plaintiff have suffered loss of reputation, shame, mortification, and emotional injury.

50. The conduct of defendants, and each of them, was a substantial factor in causing Plaintiff harm.

## SIXTH CAUSE OF ACTION
### Respondeat Superior
### [Against All Defendants]

51. Plaintiff repeats and re-alleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

52. The elements of Respondeat Superior are:  1.The negligent party was an employee of the company at the time of the accident that caused the injuries; 2. The employee was acting within the scope of his or her employment at the time of the incident; and (3) The employee's actions were done to benefit the employer. Health care is one industry in which the principle of respondeat superior is having a major impact. Respondeat superior is an extension of the principle of vicarious liability that holds an employer responsible for the conduct of an employee. Employees of the City and elected officials as well as staff could be considered as employees resulting in their employer being held liable for their actions. **Plaintiff are informed and believe, and thereon allege, that at all relevant times herein, defendants, and each of them, were employees and/or agents of each other, and in doing the things herein alleged, were acting within the course and scope of that agency and employment. Defendants, and each of them, are**

12

therefore liable to Plaintiff for the tortious actions and inactions of the other defendants, as alleged herein.

53. Plaintiff are informed and believe, and thereon allege, that at all times herein mentioned, that each of the Defendants and all DOEs, were agents and employees of their respective employers at the time of their actions. Plaintiff further alleges that these officials, and each of them, were acting within the course and scope of their agency and employment. Defendants, and each of them, are here fore liable to Plaintiff for the tortious acts and inactions of all other defendants, as alleged herein.

54. "[U]nder the Tort Claims Act, public employees are liable for injuries caused by their acts and omissions to the same extent as private persons. Vicarious liability is a primary basis for liability on the part of a public entity, and flows from the responsibility of such an entity for the acts of its employees under the principle of respondeat superior. As the Act provides, '[a] public entity is liable for injury proximately caused by an act or omission of an employee of the public entity within the scope of his employment if the act or omission would . . . have given rise to a cause of action against that employee,' unless 'the employee is immune from liability.' (Gov. Code, § 815.2, subds. (a), (b).)" (*Zelig v. County of Los Angeles* (2002) 27 Cal.4th 1112, 1128 [119 Cal.Rptr.2d 709, 45 P.3d 1171], internal citations omitted.)

55. The conduct described in more detail above of the defendants, and each of them, was a substantial factor in causing Plaintiff harm.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, requests the following relief against Defendants:

1. For general damages, according to proof;

2. For past loss of earnings and benefits, according to proof;

13

3. For future lost earnings capacity and benefits, according to proof;

4, For all costs of suit incurred herein;

6. For prejudgment and post judgment interest, according to law;

7. For exemplary and/or punitive damages; and

8. For such other and further relief as the court deems just and proper.

Dated: October 25, 2021                    Respectfully Submitted,

                                            THE LAW OFFICE OF JOHN E. COWAN

                                            By_____
                                                John E. Cowan, Esq.
                                                Attorney for Plaintiff
                                                Lori Reese Brown